UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| AUTUMN DAWN CONROY,<br><br>                    Plaintiff,<br><br>        vs.<br><br>OFFICER MEEKS, Pennington County Jail, in her individual and official capacities; OFFICER CARR, Pennington County Jail, in his individual and official capacities; and COMMANDER YANTIS, Pennington County Jail, in his individual and official capacities,<br><br>                    Defendants. | 5:23-CV-05056-KES<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff, Autumn Dawn Conroy, an inmate at the Pennington County Jail, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983.[1] Docket 1. Conroy filed a motion for leave to proceed in forma pauperis and provided her prisoner trust account report. Dockets 2 and 3.

## I.      Motion to Proceed In Forma Pauperis

Conroy reports average monthly deposits of $00.00 and an average monthly balance of $00.00. Docket 3 at 1. Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma

---

[1] Conroy filed her complaint under the 1868 Treaty of Fort Laramie Bad Men's Clause. Docket 1 at 1. But the court will analyze her complaint under the 42 U.S.C. § 1983 standard because Conroy does not name the United States as a defendant and this action was not filed in the Court of Claims, which is the court that has jurisdiction to hear "Bad Man" Clause claims. *See Hebah v. United States*, 428 F.2d 1334, 1334–40 (Fed. Cl. 1970).

pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court may, however, accept partial payment of the initial filing fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Based on the information regarding Conroy's prisoner trust account, the court grants Conroy leave to proceed in form pauperis and waives her initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay her filing fee, Conroy must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

*Id.* The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Conroy's institution. Conroy remains responsible for the entire filing fee, as long as she is a prisoner. *See In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.    1915A Screening

### A.    Factual Background

The facts alleged in Conroy's complaint are: that defendants violated Conroy's Eighth Amendment rights because they abused, neglected, and dehumanized her by failing to provide proper medical treatment or hygiene. Docket 1 at 3, 5–7. Conroy alleges that Commander Yantis inhumanely punished her and other inmates with prolonged lockdown hours in dirty, hot prison cells. *Id.* at 3. She claims that Yantis's officers, including Officer Carr, left her in a cell for days without clean clothes, medical treatment, a drinking cup, a shower, and soap. *Id.* at 3, 6. Conroy claims that the dirty cell caused her to develop a skin irritation, which she believes to be Scabies. *Id.* at 3. She alleges that she did not have the condition prior to entering the Pennington County Jail, and she now has permanent scars from the neglect and abuse she suffered. *Id.* She reported the skin irritation, but she claims to have been denied medical help for the skin irritation, her heart murmur, and chest pains.

3

*Id.* at 3, 6. Conroy claims that when she cried for help Carr yelled at her and threatened her to be quiet. *Id.* at 6.

Conroy claims that Officer Meeks used excessive force, intimidation, and verbal assault and abuse against her. *Id.* at 5. Conroy alleges that Meeks shook her keys and yelled "she's a big dog" at the inmates. *Id.* Conroy claims Meeks cursed at her, and Conroy "asked her not to talk that way to [her] that that was abuse." *Id.* Conroy alleges that Meeks said she was sorry, acknowledging the verbal assault. *Id.* Conroy claims that Yantis allowed verbal abuse and violation of federal, tribal, human, and other civil rights. *Id.*

Conroy claims that Yantis, Meeks, and Carr's actions caused her severe mental, emotional, spiritual, and physical trauma. *Id.* at 3, 5–7. She sues all defendants in their individual and official capacities. *Id.* at 2. Conroy seeks money damages of an unspecified amount. *Id.* at 7. She asks the court "to stop these hate crimes against human beings." *Id.* She asks for justice and for the Pennington County Jail "to be held accountable for these crimes." *Id.*

**B.    Legal Background**

The court must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v.*

4

*City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation and footnote omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 554–63)).

Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now screen Conroy's complaint under 28 U.S.C. § 1915A.

**C.     Legal Analysis**

**1.     Official Capacity Claims for Money Damages**

Conroy brings claims against Yantis, Meeks, and Carr in their official capacities for money damages. Docket 1 at 2, 7. Yantis, Meeks, and Carr were employees of the Pennington County Jail at the time of the incidents in question. *Id.* at 2. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Conroy's official capacity claims against Yantis, Meeks, and Carr are equivalent to claims against Pennington County.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A county government may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *Id.*; *see also Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1997) (finding that "the [governmental] entity's official 'policy or custom' must have 'caused' the constitutional violation" in order for that entity to be liable under § 1983).

Here, Conroy fails to allege facts that show the existence of an unconstitutional policy or custom. Thus, Conroy's claims for money damages against Yantis, Meeks, and Carr in their official capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2.    Bad Men Clause

Article 1 of the 1868 Treaty of Fort Laramie states that

> If bad men among the whites, or among other people subject to the authority of the United States, shall commit any wrong upon the person or property of the Indians, the United States, upon proof made to the agent and forwarded to the Commissioner of Indian Affairs at Washington city, proceed at once to cause the offender to be arrested and punished according to the laws of the United States, and also reimburse the injured person for the loss sustained.

1868 Treaty of Fort Laramie art. I, Feb. 16, 1898, 15 Stat. 635. The "bad-men provision" gives Indian plaintiffs who have been injured a right to sue the United States for reimbursement for their loss. *See Elk v. United States*, 87 Fed. Cl. 70, 78 (Fed. Cl. 2009). The bad-men provision allows individual Indians to file suit against the United States for reimbursement—not against the "bad men" themselves. *Richard v. United States*, 677 F.3d 1141, 1151 (Fed. Cir. 2012); *Cheyenne & Arapaho Tribes v. United States*, 151 Fed. Cl. 511, 517–18 (Fed. Cl. 2020). *See also Jones v. Norton*, 809 F.3d 564, 577 (10th Cir. 2015) ("Even though the Treaty can be read to grant individual rights to [tribal] members, the text is clear that those rights only arise directly *against the United States*, and must be enforced through the mechanism prescribed in the Treaty . . . ."). Conroy has only named as defendants employees of the Pennington County Jail and has not named the United States as a defendant. *See* Docket 1 at 2. Thus, Conroy's claims under the Bad Men Clause of the 1868 Treaty of Fort Laramie fail to state a claim upon which relief may be granted and are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Indian Civil Rights Act

Conroy alleges that defendants' actions violated the Indian Civil Rights Act (ICRA). Docket 1 at 5. ICRA prohibits an Indian tribe from violating constitutional rights in exercising powers of self-government. 25 U.S.C. § 1302. ICRA only provides a private right of action for habeas relief. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 64–65 (1978). Conroy has not filed a habeas petition and has not alleged wrongful conduct by a tribe. Thus, Conroy fails to state a claim upon which relief may the granted, and Conroy's claims under ICRA are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 4. Not Invisible Act

Conroy alleges that defendants violated her rights under the Not Invisible Act of 2019. Docket 1 at 5. The Not Invisible Act establishes a "joint commission on violent crime on Indian lands and against Indians[.]" Pub. L. No. 116-166, 134 Stat 766. The act does not state that it creates a private right of action. *See id.* The Supreme Court has held that where an act does not include an explicit sort of "right- or duty-creating language" the Court "rarely impute[s] to Congress an intent to create a private right of action." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 n.3 (2002) (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 667, 690 n.13 (1979)). Thus, Conroy's claims against defendants under the Not Invisible Act fail to state a claim upon which relief may be granted and are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 5.    Eighth Amendment

Construing Conroy's complaint liberally, she alleges violations of her Eighth Amendment right to be free from cruel and unusual punishment. Docket 1 at 3, 5–7.

### a.    Medical Needs

Conroy brings claims against Yantis and Carr for deliberate indifference to serious medical needs in violation of her Eighth Amendment right to be free from cruel and unusual punishment. *Id.* at 3, 6. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.

1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [she] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784 (citation and internal quotation omitted). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Conroy alleges sufficient facts to state a claim for deliberate indifference to serious medical needs. She alleges that she has serious medical conditions, including Scabies and a heart murmur. Docket 1 at 3, 6. She alleges that Carr and jail officers were aware of and deliberately disregarded those needs. *See id.*

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

10

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Conroy does not allege that Yantis participated in the unconstitutional conduct or failed to train or supervise Carr. Docket 1 at 3. Thus, Conroy's Eighth Amendment deliberate indifference claim against Yantis in his individual capacity is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Conroy's deliberate indifference claims seeking injunctive relief against Yantis in his official capacity and Carr in his individual capacity seeking damages and in his official capacity seeking injunctive relief survive § 1915A screening.

### b.    Conditions of Confinement

Construing Conroy's complaint liberally, she brings claims for conditions of confinement in violation of her Eighth Amendment right to be free from cruel and unusual punishment against Yantis and Carr. Docket 1 at 3, 5. To sufficiently allege that the conditions of confinement violate the Eighth Amendment, Conroy must assert that the alleged deprivation resulted "in the denial of the minimal civilized measure of life's necessities" and that prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 834, 837 (internal quotation omitted). First, under the objective component, an inmate must show that a condition of confinement "pose[s] an unreasonable risk of serious damage to [her] future health" or safety. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The Supreme Court has listed "food, clothing, shelter, medical care, and reasonable safety" as minimal civilized measures. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

11

Second, under the subjective component, the inmate must show that the defendant prison officials "act[ed] with a sufficiently culpable state of mind" in relation to the prison condition. *Hudson*, 503 U.S. at 8 (alteration in original) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A " 'should-have-known' standard . . . is not sufficient to support a finding of deliberate indifference[.]" *Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). A prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result." *Farmer*, 511 U.S. at 835. A prisoner need only show that the prison official knew of and disregarded "an excessive risk to inmate health or safety." *Id.* at 837. This "subjective approach to deliberate indifference does not require a prisoner seeking 'a remedy for unsafe conditions [to] await a tragic event [such as an] actua[l] assault[t] before obtaining relief.' " *Id.* at 845 (alterations in original) (quoting *Helling*, 509 U.S. at 33-34).

Conroy alleges that the booking cell she was placed in was dirty, hot, and small, and she was locked in the cell for hours. Docket 1 at 3. She alleges that she was not provided a cup for water and clean clothing. *Id.* at 6. She claims that she developed a skin condition from the cell, and she asked Carr for her to receive medical care for the condition. *Id.* Conroy claims that Carr threatened her in response to her request for medical attention. *Id.* Conroy claims that "[t]his is pure evil and extreme abuse[.]" *Id.* Conroy alleges that Yantis kept her locked in the cell for long hours to inhumanely punish her. *Id.* at 3. Thus, Conroy's Eighth Amendment conditions of confinement claims against Carr

and Yantis in their individual capacities seeking damages and in their official capacities seeking injunctive relief survive § 1915A screening.

### c.     Excessive Force

Conroy brings claims against Meeks and Yantis for excessive force in violation of her Eighth Amendment right to be free from cruel and unusual punishment. *See* Docket 1 at 5. The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In considering an Eighth Amendment claim for excessive force, the "core judicial inquiry . . . [is] whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7). To determine whether force was used in good faith, "courts may consider the need for applying force, the relationship between that need and the amount of force utilized, the threat the responsible officials reasonably perceived, any efforts used to diminish the severity of a forceful response, and the extent of the injury inflicted." *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008) (citing *Hudson*, 503 U.S. at 7). Conroy alleges that Meeks was intimidating, yelling at prisoners, and swearing at Conroy. Docket 1 at 5. Conroy does not allege that she experienced an unnecessary and wanton infliction of pain from Meeks. *Id.*

Conroy also does not allege that Yantis committed any excessive force against her. *Id.* at 3. Conroy alleges that Yantis allowed Meeks to engage in

abusive conduct. *Id.* at 5. In the 1983 context, supervisor liability is limited. *See White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994). A supervisor cannot be held liable, on a theory of respondeat superior, for an employee's unconstitutional actions. *Id.* A supervisor incurs liability when he or she is "personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation." *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 761 (8th Cir. 2003) (citing *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Id.* (alteration in original) (quoting *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994)). While Conroy alleges that Yantis allowed excessive force, she has not alleged any facts showing that any excessive force occurred against her. Conroy alleges only verbal abuse; she does not allege physical abuse or physical use of force. Docket 1 at 5. Thus, Conroy fails to state a claim against Meeks and Yantis for excessive force in violation of her Eighth Amendment rights, and Conroy's Eighth Amendment excessive force claims against Meeks and Yantis are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Thus, it is ORDERED:

1.   That Conroy's motion for leave to proceed in forma pauperis, Docket 2, is granted.

2.   That the institution having custody of Conroy is directed that whenever the amount in Conroy's trust account, exclusive of funds

14

available to her in her frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Conroy's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid.

3.   That Conroy's claims for money damages against Yantis, Meeks, and Carr in their official capacities are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

4.   That Conroy's claims against defendants under the Bad Men Clause of the Treaty of Fort Laramie are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5.   That Conroy's claims against defendants under ICRA are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6.   That Conroy's claims against defendants under the Not Invisible Act are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

7.   That Conroy's Eighth Amendment deliberate indifference claim against Yantis in his individual capacity is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

8.   That Conroy's deliberate indifference claims against Yantis seeking injunctive relief in his official capacity and Carr in his individual capacity seeking damages and in his official capacity seeking injunctive relief survive § 1915A screening.

9.   That Conroy's conditions of confinement claims against Yantis and Carr in their individual capacities seeking damages and in their official capacities seeking injunctive relief survive § 1915A screening.

10.  That Conroy's Eighth Amendment excessive force claims against Meeks and Yantis are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

11.  That the Clerk of Court shall send blank summons forms and Marshall Service Forms (Form USM-285) to Conroy so that she may cause the complaint to be served upon defendants Yantis and Carr.

12.  That Conroy shall complete and send the Clerk of Court a separate summons and USM-285 form for defendants Yantis and Carr.

13.  That the United States Marshal Service shall serve the completed summons, together with a copy of the complaint (Docket 1) and this order, upon defendants Yantis and Carr.

14.  That Defendants Yantis and Carr will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

15.    That Conroy will keep the court informed of her current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

Dated November 28, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE